■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN BURLEY, Appellant.—Judgment unanimously reversed and motion to suppress granted. Memorandum: Defendant and another were walking down the street drinking a can of beer in the Village of Dansville at approximately 2:00 A.M. when they were apprehended by the local police. The police gave them their *Miranda* warnings at the scene and took them to the local police station. There defendant was questioned about a burglary which had taken place two weeks before at the Golden Acres Dairy Bar and the soles of his sneakers were examined. When defendant asked whether they were under arrest and with what they were charged, the police replied that they hadn't yet made up their minds. Defendant made several requests for an attorney, but his requests were ignored. A couple of hours later they were taken before a Village Justice and arraigned on a charge of loitering in violation of subdivision 6 of section 240.35 of the Penal Law. Unable to post bond, they were committed to the Livingston County Jail in Geneseo. Shortly after being committed there, defendant was questioned by Investigator York of the Sheriff's department about the Golden Acres burglary, was shown a sketch of a sneaker tread from a photograph taken of an imprint in the dirt at the scene of the burglary, and was asked to compare the sketch with the soles of his sneakers. Within an hour defendant made incriminating statements with respect to the burglary which, when reduced to writing by the investigator, he refused to sign. Defendant was subsequently indicted for burglary in the third degree. Defendant moved to suppress the sneakers and his admissions on the ground that they were the result of an illegal arrest because of the fact that the charge on which he was arrested and committed had been held unconstitutional three years before *(People v Berck,* 32 NY2d 567). The court granted the motion with respect to the sneakers, but held that the admissions were voluntary and not the product of improper police conduct because the officer to whom the statement was given was not one of the arresting officers. Defendant then entered a plea of guilty to attempted burglary in the third degree. We find his statements to be the product of an unlawful sham arrest, obtained in violation of defendant's Fourth Amendment rights, and that they should therefore have been excluded from use in evidence. We are not here presented with an issue of voluntariness under the Fifth Amendment, but rather with an issue of

tainted evidence obtained through an unlawful arrest in violation of the Fourth Amendment. Following the standards established in *Brown v Illinois* (422 US 590) where the Supreme Court rejected the notion that the mere giving of *Miranda* warnings is enough to purge the taint of an unlawful arrest, the Court of Appeals has stated "that in addition to the dictates of *Miranda* and the standard of voluntariness, the controlling consideration for determining the admissibility of 'verbal' evidence obtained pursuant to claimed illegal police conduct is whether law enforcement officers acted in good faith and with a fair basis for belief that probable cause existed for an arrest." *(People v Martinez,* 37 NY2d 662, 668.) Defendant was arrested and committed on a charge which had been declared a nullity more than three years before. He was questioned immediately upon being taken to the local police station about the burglary and again questioned almost immediately after being committed to the county jail. On these facts, despite the *Miranda* warnings being given, there were not sufficient intervening circumstances to attenuate the confession and remove the tainted effect of the initial sham arrest. The fact that the admissions were made to a member of the Sheriff's department, not to the arresting agency, is of no significance. Both the local police and the Sheriff's department were tracking down suspects in the Golden Acres Dairy burglary. York knew immediately upon beginning duty that morning that Burley was incarcerated in the jail and began at once to question him. The burden of showing the admissibility of the statement rests upon the People *(Brown v Illinois, supra)* and they introduced no facts which would indicate that the circumstances under which the statement was given were so attenuating as to make it admissible. The record does not indicate, and the People do not argue, that there was any basis for a finding of probable cause to make the arrest (see *People v Peterkin,* 48 AD2d 843; cf. *People v Pitsley,* 55 AD2d 1028). The admissions were clearly produced by exploitation of an illegal arrest in violation of defendant's Fourth Amendment rights and as such must be suppressed. If it were not necessary to exclude defendant's admissions on Fourth Amendment grounds, we would find it necessary to suppress them on the ground that he was denied his right to counsel under the Sixth Amendment. It is fundamental that when a defendant expresses a desire to have an attorney present, the police are prohibited from further interrogation. *(Miranda v Arizona,* 384 US 436; *People v Martinez, supra; People v Jackson,* 22 NY2d 446.) Inasmuch as defendant's uncontradicted testimony that he requested a lawyer on several occasions was the subject of a finding by the court below, his admissions must also be suppressed for denial of his Sixth Amendment right to counsel. Since admissibility of Burley's confession was "a likely factor which might have induced the plea and might have affected substantially a verdict upon the trial", the conviction should be reversed, the plea vacated and the defendant's statement suppressed *(People v Ramos,* 40 NY2d 610, 619). (Appeal from judgment of Livingston County Court—attempted burglary, third degree.) Present—Moule, J. P., Cardamone, Simons, Hancock, Jr., and Denman, JJ.